b

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| DERRICK FORD,<br>Plaintiff | CIVIL DOCKET NO. 1:23-CV-01358 |
| VERSUS | DISTRICT JUDGE DOUGHTY |
| MARK WOOD, ET AL.,<br>Defendants | MAGISTRATE JUDGE PEREZ-MONTES |

REPORT AND RECOMMENDATION

Before the Court are Defendants' two Motions to Dismiss that are opposed. ECF Nos. 6, 10. Plaintiff Derrick Ford ("Ford") opposes both.

Because Ford amended his Complaint to cure the issues raised by the Rapides Parish Sheriff's Office ("RPSO") Defendants in their motion (ECF No. 6), that Motion to Dismiss (ECF No. 6) should be DENIED AS MOOT. And because Defendant Dr. Slaughter is an independent contractor and a policymaker, his Motion to Dismiss (ECF No. 10) should be: DENIED as to Ford's official capacity claims; DENIED AS MOOT as to Ford's claim for punitive damages; DENIED AS MOOT as to Ford's state law medical malpractice claim; and DENIED as to Ford's § 1983 claims.

I. Background

Plaintiff Derrick Ford ("Ford") filed a Complaint pursuant to: 42 USC § 1983; the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 2131, 12132; the Rehabilitation Act, 29 U.S.C. § 794; and supplemental state law claims. ECF Nos. 1, 8, 12 The named Defendants are Rapides Parish Sheriff Mark Wood ("Wood") (in his

official capacity), his unnamed excess insurance carrier,[1] and several of his employees: Rapides Parish Correctional Center ("RPCC") Chief of Corrections Mike Slocum ("Slocum") (in his individual capacity); RPCC Major Doug Hollingsworth ("Hollingsworth") (in his individual capacity); RPCC Commander Mark Saucier ("Saucier") (in his individual capacity); RPCC Security Investigator Lieutenant Josh Daniels ("Daniels") (in his individual capacity); RPSO Lieutenant Mark Thomas ("Thomas") (in his individual capacity); RPSO Sergeant Brent Anderson ("Anderson") (in his individual capacity); RPSO Deputy Tyler Bennett ("Bennett") (in his individual capacity); and RPSO Deputy Danny Prenell ("Prenell") (in his individual capacity) (collectively the "RPSO Defendants"). Ford also names as Defendants; Nortec, L.L.C., a private medical company employed to provide medical care to detainees and inmates at the RPCC; Nortec's unnamed insurer; and Dr. Lois Darien Slaughter ("Dr. Slaughter") (in his official capacity as director of medical services at RPCC) . ECF No. 12

Ford contends that he is mentally ill and that, when he had a psychotic episode (with hallucinations) in October 2022, he called the police for assistance. The officers submitted a Police Request for Emergency Examination and took him to Longleaf Hospital for a psychiatric examination. ECF No. 12. On admission to Longleaf, Dr. Rodgman made a preliminary diagnosis and findings that Ford: (1) had acute

---

[1] For any amounts awarded beyond the amount of coverage provided by the Louisiana Sheriff's Association self-insurance fund.

psychiatric conditions requiring 24-hour medical care; (2) was a potential danger to himself or others; (3) would not properly respond to less intensive treatment; (4) less intensive treatment was not safe or feasible; and (5) was gravely disabled with severe deterioration in functioning. ECF No. 12.

When the medical staff at Longleaf Hospital removed Ford's restraints, he charged after a nurse and damaged a television. Longleaf staff members put Ford back into restraints and called the RPSO for assistance. Longleaf Hospital released Ford into RPSO custody before he was given physical or psychiatric examinations. ECF No. 12.

Ford contends RPSO deputies beat him, shackled his wrists and ankles, and left him continuously shackled for four days without periodic monitoring. ECF No. 12 . Ford did not receive a medical screening upon his arrival at RPCC, nor did he receive mental or physical medical care during his four day incarceration. ECF No. 12. Ford further contends another inmate poured lighter fluid on Ford and set him on fire, burning Ford's body and causing permanent damage to him for which he was not provided medical care. ECF No. 12. Due to his mental impairment, Ford was unable to draft and submit a grievance. ECF No. 12.

On the fourth day of detention, Ford was found unconscious and having difficulty breathing. ECF No. 12. An ammonia capsule was activated and chest compressions were started. An ambulance took Ford to a hospital. The EMTs noted

3

that Ford appeared to be dehydrated and had wounds around his hands. ECF No. 12.

Ford spent 30 days in the hospital. He had gangrene and necrosis on right leg, right arm and hand, and left foot, caused by the shackles and, as a result, his right arm, right leg below the knee, and part of his left foot were amputated. ECF No. 12. Ford also had acute kidney injury, severe hyperkalemia and renal failure, and acute respiratory failure. ECF No. 12.

Ford asserts claims for use of excessive force, unlawful seizure and detention, denial of medical care. Ford also contends Sheriff Wood failed to properly screen, hire, train, monitor, investigate incidents, and discipline deputies, and had official policies, patterns, practices, or customs of allowing deputies to violate the constitutional rights of detainees and inmates in their custody.

Ford asserts claims under the ADA and Section 504 of the Rehabilitation Act, because Sheriff Wood and the RPSO receive federal funds, and contends the Defendants violated Title II of the ADA, 42 U.S.C. § 12131, 12132, and Section 504 of the Rehabilitation Act. Ford contends he was discriminated against due to his mental impairments.

Ford also asserts claim under Louisiana law for negligence, gross negligence, and intentional violations of Louisiana constitutional and statutory law for: assault and battery, La. C.C. art. 2315; and denial of medical care, La. C.C. art. 2320. Ford

seeks a jury trial, declaratory relief, and monetary damages, including punitive damages.

Plaintiff voluntarily dismissed his claim against Nortec, L.L.C upon learning it had been replaced by Dr. Slaughter as the RPCC healthcare provider. ECF Nos. 4, 5. Defendants Woods, Slocum, Hollingsworth, Saucier, and Daniels (the "RPSO Defendants") then filed a Motion to Dismiss Ford's repetitive official capacity claim and claims for punitive damages. ECF No. 6. In response, Plaintiff amended his Complaint to specify that his claims against Wood are official capacity claims, and his claims against all other RPSO Defendants are individual capacity claims. He also identified previously anonymous RPSO Defendants. ECF Nos. 8, 24.

Defendant Dr. Slaughter filed a Motion to Dismiss for Failure to State a Claim, arguing: (1) the official capacity claims against him are repetitive of the official capacity claims against Sheriff Wood; (2) the claim for punitive damages should be dismissed; and (3) Ford's claims are all for medical malpractice claim and are premature because he has not presented them to a medical review panel. ECF No. 10. Ford responded with a Second Amended and Supplemental Complaint (ECF Nos. 12, 25) and an opposition to the Motion to Dismiss (ECF No. 13).

I.  **Law and Analysis**

   A.  **Standards for Motion to Dismiss**

A court may grant a motion to dismiss for "failure to state a claim upon which relief can be granted" under Fed. R. Civ. P. 12(b)(6). "[A] complaint will survive

5

dismissal for failure to state a claim if it contains 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Legate v. Livingston*, 822 F.3d 207, 210 (5th Cir. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The court must view all well-pleaded facts in the light most favorable to the plaintiff. *See Yumilicious Franchise, L.L.C. v. Barrie*, 819 F.3d 170, 174 (5th Cir. 2016).

Although a court must accept all well-pleaded facts as true, "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *See Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (quoting *Papasan v. Allain,* 478 U.S. 265, 286 (1986)). Generally, a court should not dismiss a lawsuit under Rule 12(b)(6) without giving plaintiff "at least one chance to amend." *See Hernandez v. Ikon Office Solutions, Inc.*, 306 Fed. Appx. 180, 182 (5th Cir. 2009). However, that general rule does not apply if an amendment would be futile. *See Townsend v. BAC Home Loans Servicing, L.P.*, 461 Fed. Appx. 367, 372 (5th Cir. 2011); *Jaso v. The Coca Cola Co.*, 435 Fed. Appx. 346, 351–52 (5th Cir. 2011). In this context, futility means "that the amended complaint would fail to state a claim upon which relief could be granted." *See Stripling v. Jordan Production Co., L.L.C.,* 234 F.3d 863, 873 (5th Cir. 2000).[2]

---

[2] "Dismissal is appropriate when the complaint 'on its face show[s] a bar to relief.'" *Celino v. Biotronik, Inc.*, 536 F. Supp. 3d 89 (E.D. La. 2021) (citing *Cutrer v. McMillan*, 308 Fed. Appx. 819, 820 (5th Cir. 2009); *Clark v. Amoco Production Co.*, 794 F.2d 967, 970 (5th Cir. 1986)).

B. <u>**The RPSO Defendants' Motion to Dismiss should be denied as moot.**</u>

The RPSO Defendants argue that Ford's official capacity claims against all Defendants are duplicative of his official capacity claims against Sheriff Wood. As such, the RPSO Defendants seek dismissal of those claims against all Defendants except Sheriff Wood. ECF No. 6.

In his Amended Complaint, however, Ford states that his claims against Sheriff Wood are official capacity claims, and his claims against all other RPSO Defendants are individual capacity claims. ECF Nos. 8, 12.

The RPSO Defendants also contend that punitive damages are not available against a governmental entity (the RPSO) or under state law. The RPSO Defendants' concerns in this regard have been addressed. Ford amended his Complaint to request punitive damages only from the RPSO Defendants sued in their individual capacities – Slocum, Hollingsworth, Saucier, Daniels, Thomas, Anderson, Bennett, and Prenell – pursuant to §§ 1983 and 1988. ECF Nos. 8, 12.

Because Ford's Amended Complaints cured the issues raised by the RPSO Defendants as to the "official capacity" and punitive damages claims, that Motion to Dismiss (ECF No. 6) should be denied as moot.

C. <u>**Slaughter's Motion to Dismiss should be denied.**</u>

Dr. Slaughter argues in his Motion to Dismiss that: (1) Ford's official capacity claims are repetitive of those against Sheriff Wood; (2) Ford's medical malpractice

claims are premature; and (3) punitive damages are not available against him in his official capacity. ECF No. 10.

### 1. The official capacity claims against Dr. Slaughter are not repetitive of the claims against Sheriff Wood.

Ford sues Dr. Slaughter in his official capacity as the Director of Medical Services at RPCC, contending he is an independent contractor and not an employee of Sheriff Wood or the RPSO.

First, it is clear that Dr. Slaughter is, in fact, an independent contractor. In his Second Amended Complaint (ECF No. 12-2), Ford states that he is suing Dr. Slaughter in his official capacity as the Director of Medical Services at RPCC. Ford shows that Dr. Slaughter works as the Medical Director for the RPSO, under contract to provide medical services to inmates at the RPCC. Specifically, the contract provides: "It is the express intention of the parties that Physician is an independent contractor and not an employee or agent of the RPSO or the Sheriff. Nothing in this Agreement shall in any way be construed to indicate that Physician is an employee of the RPSO or the Sheriff." ECF No. 25-3 at 3. The contract further states: "Physician shall be responsible for overall supervision of medical and healthcare services to RPSO's inmates and work release participants and such medical care shall be in the sole discretion of the Physician."[3] ECF No. 25-3 at 2. Dr. Slaughter "is to

---

[3] In addition to the contract language, Louisiana law provides that "[a] licensed physician shall be responsible for the health care program and for the practice of medicine in the institution, and no restrictions shall be placed on the medical judgment of the physician." 22 La. Admin. Code Pt III § 2909(A).

utilize his independent professional judgment in the care and treatment of inmates or third persons consistent with the policies and procedures of RPSO and the obligations of a physician in the Physician's specialty in the locale of Rapides Parish, Louisiana." ECF No. 25-3 at 3. "Further, [Dr. Slaughter] agrees to comply with RPSO's personnel and inmate management plan, and all service standards, clinical protocols, policies, and procedures developed and reviewed by Physician and implemented by the RPSO . . . ." ECF No. 25-3 at 6.

The parish sheriff is "the keeper of the public jail of his parish." *See* La. R.S. 13:5539(C), La. R.S. 15:704. However, "[a]n official may be a policymaker . . . in a particular area or on a particular issue." *Nagle v. Gusman*, 2016 WL 768588, at *8 (E.D. La. 2016) (finding the prison's physician had policymaking authority regarding the mental health treatment of the inmates). In *Thompson v. Ackal,* the court found the pertinent prison healthcare policies were implemented by a private contractor that had policymaking authority pursuant to the express terms of its written contract with the municipality that it served. *See Thompson v. Ackal*, 2016 WL 1394352, at *5-*6 (W.D. La. 2016), *report and recommendation adopted,* 2020 WL 1391047 (W.D. La. 2016)

The same is true here. Dr. Slaughter's contract with RPSO made him responsible for the healthcare serviced provided to inmates at RPCC, and for development and review of service standards, clinical protocols, policies, and procedures. Therefore, Dr. Slaughter is a final policy maker with respect to the

9

provision of physical and mental health care to inmates.[4] *See Colbert v. City of Baton Rouge*, 2018 WL 2224062, at *5 (M.D. La. 2018), *on reconsideration in part*, 2018 WL 3430689 (M.D. La. 2018).

Because Dr. Slaughter is not an employee of Sheriff Wood, the RPSO, or Rapides Parish, but is rather an independent contractor and final decisionmaker regarding the healthcare provided to inmates at RPCC, the official capacity claims

---

[4] It is also clear that Dr. Slaughter is a state actor. Section 1983 provides redress for conduct by any person who, under color of state law, acts to deprive another person of any right, privilege, or immunity secured by the Constitution and laws of the United States. *See* 42 U.S.C. §1983. A plaintiff in a civil rights suit must show that the disputed conduct was committed by a person acting under color of state law. *See Lugar v. Edmondson Oil Co., Inc.,* 457 U.S. 922, 930 (1982). "Purely private conduct, no matter how wrongful, is not within the protective orbit of § 1983." *Shelley v. Kraemer*, 334 U.S. 1, 13 (1948).

"The traditional definition of acting under color of state law requires that the defendants in a §1983 action have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *West v. Atkins*, 487 U.S. 42, 49 (1988) (holding that a private doctor under contract with the state to supply medical services to prisoners was a state actor). "To constitute state action, the deprivation must be caused by the exercise of some right or privilege created by the state or by a person for whom the state is responsible and the party charged with the deprivation must be a person who may fairly be said to be a state actor." *Id.* (citing *Lugar,* 457 U.S. at 937 n. 18).

For example, in *West v. Atkins,* the United States Supreme Court found, "[t]he fact that the State employed respondent pursuant to a contractual arrangement that did not generate the same benefits or obligations applicable to other 'state employees' does not alter the analysis. It is the physician's function within the state system, not the precise terms of his employment, that determines whether his actions can fairly be attributed to the State." *Id. at 55-56.* "In the State's employ, respondent worked as a physician at the prison hospital fully vested with state authority to fulfill essential aspects of the duty, placed on the State by the Eighth Amendment and state law, to provide essential medical care to those the State had incarcerated. Doctor Atkins must be considered to be a state actor. *Id.* at 56-57.

As in *West*, Dr. Slaughter is a private doctor under contract with a government entity to supply medical services to prisoners, and is fully vested with the authority of the State to fulfill the essential aspects of that duty. Thus, Dr. Slaughter is a state actor for purposes of § 1983.

against him are not "duplicative" of the official capacity claims against Sheriff Wood. *See Colbert*, 2018 WL 2224062, at *5. Dr. Slaughter's Motion to Dismiss Ford's official capacity claims against him (ECF No. 10) should be denied.

### 2. Ford abandoned his claim for punitive damages.

Dr. Slaughter also argues that Ford's claim for punitive damages against him should be dismissed. In his Second Amended Complaint, Ford abandoned his claim for punitive damages against Dr. Slaughter in his official capacity. Therefore, Dr. Slaughter's Motion to Dismiss Ford's claim for punitive damages (ECF No. 10) should be denied as moot regarding that issue.

### 3. Ford abandoned his medical malpractice claims.

Finally, Dr. Slaughter seeks dismissal of Ford's claims against him under the Louisiana Medical Malpractice Act as premature.

Ford removed all state law medical malpractice claims against Dr. Slaughter in his Second Amended and Supplemental Complaint, leaving only the § 1983 claims. ECF No. 13.

Pursuant to § 1983, Ford contends Dr. Slaughter was deliberately indifferent to his serious medical needs when he cut off inmates' access to medication and failed to adequately train and supervise the medical staff at RPCC. He also contends Dr. Slaughter shut down the prison drug dispensary and failed to ensure his medical staff reviewed and followed treatment recommendations. And Ford asserts Dr. Slaughter failed to ensure his staff: unshackled Ford; screened Ford; reviewed Dr. Rodgman's

diagnoses and treatment notes for Ford; monitored Ford; provided both mental and physical health care to Ford; and recognized the clear signs of wet and dry gangrene on Ford's arm, leg, and foot.[5] *Compare McLemore v. Garber,* 2020 WL 2301336, at *3 (W.D. La. 2020), *report and recommendation adopted,* 2020 WL 2249549 (W.D. La. 2020); *Thompson,* 2016 WL 1394352, at *6.

Ford thus asserts no state medical malpractice claim at this point. His claims are distinctive 8th Amendment claims. Therefore, Dr. Slaughter's Motion to Dismiss Ford's § 1983 claims (ECF No. 10) should be denied on this basis.

II. **Conclusion**

Based on the foregoing, IT IS RECOMMENDED that the RPSO Defendants' Motion to Dismiss (ECF No. 6) be DENIED AS MOOT.

IT IS FURTHER RECOMMENDED that Defendant Dr. Slaughter's Motion to Dismiss (ECF No. 10) be: DENIED specifically as to Ford's official capacity claims; DENIED AS MOOT as to Ford's claim for punitive damages; DENIED AS MOOT as to Ford's state law medical malpractice claim; and DENIED as to Ford's § 1983 claims.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b), parties aggrieved by this Report and Recommendation have fourteen (14) calendar days from service of this Report and Recommendation to file specific, written

---

[5] Ford contends the lack of medical records for him at RPCC shows that he did not receive a medical screening or medical care at RPCC.

objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. No other briefs (such as supplemental objections, reply briefs, etc.) may be filed. Providing a courtesy copy of the objection to the undersigned is neither required nor encouraged. Timely objections will be considered by the District Judge before a final ruling.

Failure to file written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation within fourteen (14) days from the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Judge, except upon grounds of plain error.

THUS DONE AND SIGNED in chambers in Alexandria, Louisiana, this __22nd__ day of August 2024.

_____
Joseph H.L. Perez-Montes
United States Magistrate Judge